MORRIS *against* THOMAS.

IN ERROR.

1812.

Lancaster,
Saturday,
May 30.

THIS was an ejectment, brought by *Morris* in the Common Pleas of *Berks*, in *April* 1808.

The plaintiff claimed under a warrant of the 29th of *May* 1742, to *Stamper Bland*, *Elias Bland*, and *John Bland*, for 600 acres, upon which a survey of 29 acres 40 perches, the land in dispute, was made on the 31st of *December* 1805.

The defendant claimed under *Ruth Thomas*, whose title was as follows: By warrant of the 3d of *April* 1750, a tract of 111 acres and allowance was returned for the use of *Mary Lloyd* widow of *Evan Lloyd*, and patented to her on the 19th of *August* 1751. *Ruth Thomas* was heir at law to *Mary Lloyd*, and her family had resided, for a considerable time, on this tract. On the 17th of *June* 1808, she made application to the land office for 30 acres, (the land in question) including an improvement, and adjoining the tract abovementioned; and presented two affidavits, one that it was first improved in 1783, and not before, that grain had been raised thereon, and that a person at the date of the application actually resided on the same; the other, that to the best of the applicant's knowledge, no other warrant had issued for the land. On this application a warrant was granted on the 19th of *June*, interest to be computed from the 1st of *March* 1783. The survey under the warrant of 1750, clearly excluded the land in dispute; but this land had always been called *Lloyd's* land, and that family had occasionally cut firewood and made rails on the premises, and had sold timber growing thereon. They had also cleared a part on the border of their survey, and had raised grain in it. These acts commenced about the year 1783. At the time of the plaintiff's survey in 1805, about one acre of the land was included within the defendant's fence. No person had at any time prior to the survey resided particularly on the tract claimed by the plaintiff.

After the evidence was closed below, the plaintiff's coun-

Title by improvement, is merely a right of preemption, until the purchase is made from the commonwealth. Up to that time, possession is not adverse to, but under the commonwealth; and therefore though it continue twenty-one years, it is no bar by the Statute of Limitations to the commonwealth, or her grantee.

Where there is no fraud, a party is bound by the lines of his survey returned, and the acceptance of a patent thereon.

An accidental clearing over the boundary of patented land, vests no interest in the vacant lands of the commonwealth.

A clearing of land belonging to the commonwealth, without a *bona fide* settlement, does not vest a right by improvement.

1812.

MORRIS
.v.
THOMAS.

sel requested the opinion of the court in their charge to the jury on the following points, viz.

1. Whether a man is not bound by the lines of his survey returned, and acceptance of a patent thereon, where there is no fraud.

2. Whether the accidental clearing over the boundary of patent d land, vests an interest in the vacant lands of the commonwealth, or constitutes an improvement.

3. Can a clearing of land belonging to the commonwealth, without a *bona fide* settlement, vest a right by improvement?

4. Does the statute of limitations apply to the facts in this case?

There was one other point, not material.

The court stated to the jury, that it appeared, the *Lloyd* family, under whom the defendant claimed, had for many years possession of the land in dispute, as fully as farmers generally have of their woodland. That a man is bound by the lines of his survey as returned, and acceptance of a patent thereon, where there is no fraud.—That the accidental clearing over the boundary of patented land, does not vest an interest in the vacant lands of the commonwealth, or constitute an improvement.—That the clearing of land belonging to the commonwealth, without a *bona fide* settlement, does not vest a right by improvement.—That the act of *March* 26th, 1785, entitled an act for the limitation of actions to be brought for the inheritance or possession of real property &c., and the act of *March* 12th 1800, to extend the time limited in the former act, *applied* to the facts of this case, *and operated as a bar to the claim of the plaintiff*. Verdict for the defendant.

In this court, neither party questioned the opinion of the court below, except as to the statute of limitations. Upon the error in this point, the plaintiff relied for the reversal of the judgment.

*Evans* and *C. Smith* for plaintiff in error.

*Hopkins, contra.*

TILGHMAN C. J. The opinion of the court below was asked and delivered on five points stated in the record. On

four of these opinions, there is no question, as both parties acquiesce in them. The one which remains for this court to decide on, is, whether on the matters given in evidence, the plaintiff's action was barred by the act of limitations.

The defendant gave in evidence sundry acts of ownership exercised on the land in dispute, which is principally woodland, from the year 1783 to the time of bringing this suit. And it appears that on the 17th of *June* 1808, an application was entered in the land office, for a warrant in the name of *Ruth Thomas* under whom the defendant claims, for taking up this land, on which a survey was afterwards made. The application stated that *Ruth Thomas* claimed under an improvement commenced in the year 1783. The plaintiff claimed under a warrant issued the 29th of *May* 1742, to *Stamper Bland*, *Elias Bland* and *John Bland*, in right of *Francis Stamper*, which was laid and surveyed on the land in dispute, the 31st of *December* 1805. Taking the matter in the light most favourable to the defendant, the right under which he claims commenced in the year 1783. But what kind of right was it? Has the possession from that time been adverse to the commonwealth, so as to bar the commonwealth or its grantee? Surely not. If that kind of title bars the commonwealth by the act of limitations, then all persons who have taken possession of vacant land, may acquire title without paying a cent; for if they are protected by the act of limitations, they have no need of obtaining a patent. The woodland in dispute was adjoining the cleared plantation of *Ruth Thomas*; and if she, or others who owned the cleared land, had thought proper to trespass on the woodland for fifty years without paying any consideration, or making any application to the land office, what remedy would there be at the end of the fifty years to compel payment of the usual purchase money, with interest from the time of the first cutting? I know of none, because it might be said that there never was any intention of purchasing. The most that can be said of this kind of title is, that it gives a right of preemption, in case the possessor thinks proper to complete the purchase; and that the possession in the mean time is not *adverse* to, but *under* the commonwealth. This I say, is the most that can be said of such a title, for I am not giving any opinion on it, but only stating

the argument in the strongest point of view for the defendant. Whether a right of pre-emption existed under the circumstances of this case, we are not now to determine. The point is, whether the plaintiff's claim is barred by the act of limitations? We cannot say that it is, without saying at the same time, that the possession of the defendant and those under whom he claims, was for twenty-one years before the commencement of this ejectment, exclusive of, and adverse to the commonwealth, and to the plaintiff who claims under the commonwealth. This I cannot say, for the reasons which I have given, and for others which might be given, founded on the peculiar and pre-eminent rights of the commonwealth. I am therefore of opinion, that the plaintiff was not barred by the act of limitations, and consequently that the judgment should be reversed, and a *venire facias de novo* be awarded.

YEATES J. I entirely concur in the charge of the court, that a man is bound by the lines of his survey returned, and acceptance of a patent thereon, where there is no fraud; that the accidental clearing over the boundary of patented land vests no interest in the vacant lands of the commonwealth, and constitutes no improvement; and that the clearing of lands belonging to the commonwealth, without a *bona fide* settlement, vests no right by improvement.

A variety of decisions on these several points, has fully established the law. It remains to be considered, whether the plaintiff under the facts of this case, is barred by the limitation act of 26th *March* 1785. [His honour then stated the facts.]

Under these facts it cannot be asserted, that *Ruth Thomas* had an improvement on the premises in question, known to the laws and usages of this state. Its character is truly ascertained by the third section of the act of 30th *December* 1786, which conveys the correct idea of it, as far as my recollection extends. If any equitable claim could be derived by *Ruth Thomas* under the acts of those who preceded her in the possession of these lands, it is manifest that her equity originated under the commonwealth, and was not adverse thereto. That possession was no bar to the commonwealth, who might make an entry thereon, support

an ejectment therefor, or grant the lands to any other persons, who would succeed to the same rights. It irresistibly follows, that the act of limitations could not be interposed as a bar to the plaintiff's recovery.

I am therefore of opinion, that the judgment of the Common Pleas be reversed, and that a *venire facias de novo* be awarded.

BRACKENRIDGE J. was sick during the argument, and gave no opinion.

Judgment reversed.