## McMUTRIE *et al. against* McCORMICK.

### IN ERROR.

In Pennsylvania there are two modes, by which a title to lands may be acquired from the Commonwealth; First, by warrant or location and survey, and, Second, by an actual, personal, resident settlement upon the land itself. The exercise of acts of ownership for any length of time, will not raise such a presumption of a grant from the Commonwealth, as to be of itself a good title.

Without an office-right from the Commonwealth, no possession that can be taken of land, short of an actual, personal, resident settlement upon it, or an improvement commenced with such intent, to take effect immediately, and to be carried on with due diligence, will amount to an appropriation of the land, or give the least shadow or not color of right or claim, even to the possession of it.

Whether or not there is a want of due diligence, in the prosecution of an inceptive right to lands, is a matter of fact, which is always properly submitted to the jury.

An improvement, in order to be available in law, so as to give a presumptive right to land, must be commenced with intent to make an *immediate* settlement, and prosecuted with due diligence until the settlement be completed; and if done so, the title so acquired will relate back to the commencement of the improvement.

ERROR to the Common Pleas of *Huntingdon* county.

This was an action of ejectment in which *Alexander McCormick* was plaintiff, and *William Martin* and *William McMutrie*, were defendants in the court below. The principal questions in the cause were, whether the land in dispute was subject to actual settlement in 1827, being then vacant? Was it within the lines of the defendant's survey? If not, had it been appropriated by those under whom they claimed, previously to 1827? The parol evidence, which was voluminous, need not be here stated, as the opinion of the court below, will sufficiently explain the questions decided. The court thus charged the jury.

"The lines on the ground form the true survey; the notes, returns of surveys, and drafts, are only evidence of the survey. If *Reed* is correct, the survey on the ground of *George Allen* excluded the land in dispute; yet to give *McMutrie* his distance, you would have to go to the line run by *Hunter* and *Wilson*. This principle equally applies to *Alexander McCormick's* survey: He had an old and early improvement, on which he took a warrant in 1795, calling for *McMutrie* as a boundary. Shortly before the survey was made on that warrant, *Wilson* and *Hunter*, were called by *David McMutrie* and *James McMutrie*, and old *Alexander McCormick* to fix the lines of *McMutrie's* survey, in the name of *George Allen*. They did so on the 12th and 13th of November, 1801. On the 18th of December, following, old Mr. *McCormick* had his survey made in accordance with the line run by *Wilson* and *Hunter*, and so returned. This binds him, and it is idle, or worse than idle, to say thirty years after, this was a mistake. If *Wilson* is believed, old *Alexander McCormick* conceded that the southern line of his survey, was the northern boundary of *McMutrie's*

(McMutrie et al. *v.* McCormick.)

claim. *McCormick's* return of survey binds him, and by that title, he cannot go a foot beyond it. Old Mr. *McCormick* pursued a correct course, to have all his boundaries settled before he had his survey returned, so as to prevent disputes with his neighbours. Boundaries fixed by the parties are entitled to great respect, and should never be departed from, where there is no fraud. *Alexander McCormick,* the elder, devised his estate to his two sons, *Robert* and *Alexander,* (the plaintiffs.) *Robert's* part adjoined the land in dispute. Is there any evidence that old *Alexander McCormick* ever claimed it? The lands of *Robert* and *Alexander McCormick* have been sold at Sheriff's sale, and all their title, to the old tract at least, divested. Now as a plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of his adversary's, it is manifest, if the law be regarded, the plaintiff can derive no right to recover, from any improvement or title of his own, prior to the sheriff's sale. What title then has the plaintiff shewn? The only title he can recover on, is his attempt to build a house in 1827. This is the only title he has. He did not enter on the ground and cut the timber. He hauled old logs from below *Moor's* mill, and commenced building a house. As soon as he was discovered, and when he got it to the square, the *McMutries* went and pulled it down, and hauled his logs away. This then is his title, and his only title; and circumstanced as this case is, the only title he can rely on. To January Term 1829, he brings this ejectment, on this title. The defendants contend that the land in dispute is included in this survey on a warrant to *George Allen,* and made in 1762, and returned into the Land Office on the 7th of January, 1763. Every man is bound to take notice of a survey returned. It is constructive notice, and binds equally with actual. We have said, if *Reed* be correct, the first survey made on the ground excludes the land in dispute; but the defendants' counsel contend, that after the line was run along the foot of the *Piny Ridge,* the survey was extended on paper before return; and to prove this, they rely on the fact, that the lines are too short, that *Gardner's* survey, which they have shown, made on the same day, calls for *Allen;* that they always claimed their full distance; that old *Alexander McCormick* so recognized their survey; and that they have been in possession of the general tract, claiming three hundred acres, and their full distance on the ground. If this land was plotted in by the Deputy Surveyor, and so returned in 1763, and included in that return, it was not vacant; it was not open to settlement and improvement. But as the Surveyor retained the corners, and those corners are found, it is powerful evidence that the Surveyor did not plot in any land, or he would have thrown away his corners and called for posts; and more especially so, when a line is found on the ground, running from corner to corner."

(McMutrie et al. *v.* McCormick.)

"We say, if the lines were extended before return, of which the jury will judge, the plaintiff has no pretence of claim. But suppose they were not extended, this case presents other points for serious and deliberate consideration. It manifestly appears from the testimony of *Wilson*, and from the warrant and survey made and returned, that old *Alexander McCormick*, recognized this land as the property of *McMutrie;* that *Robert* and *Alexander McCormick*, the plaintiffs, knew that the *McMutries* claimed it. Part of it had been sold to *William Myton*, the deed for that was acknowledged before *Alexander McCormick*, on the 18th of August, 1818. As to this part of the property in dispute, *Alexander McCormick* knew it was sold to *Myton*, who is since deceased. If the plaintiff stood still and did not give notice of his claim, if he had any claim, equity will postpone him. If a man looks on and sees another purchase and pay his money, and does not disclose his claim, he will be postponed. · *Myton* went into possession under his purchase, and under the old title. You will observe, the land in dispute never was claimed by the defendants by improvement, it was always claimed under the title of 1762, as within their purchase. Some actual possession was taken of it, acts of ownership exercised upon it, such as a farmer usually in *Pennsylvania* exercises over his timber lands. Their boundary was fixed by Surveyors on that side thirty years ago; now so far as actual possession has been held for twenty-one years before this ejectment brought, the title is good; for the law is, that actual occupation, however tortious it might be, however destitute of the color of title, either in law or equity, gives a right to the extent of the inclosure, against all the world but the State; 10 *Serg. & Rawle* 338. Was there any vacant land here, vacant in the beginning of April 1827? The defendant had exercised acts of ownership over it, and claimed it as within their boundary, and that boundary actually run and marked on the ground for more than thirty years. The survey of *Alexander McCormick*, sen'r. calls for "adjoining *Allen*." There appears no vacancy in the office of the Deputy Surveyor, or in the Land Office. Suppose then it was not without the surveyed or returned lines of *Allen*. If the jury should so believe, and also be of opinion, that it was claimed under the old title of *McMutrie*, and the usual possession that is exercised over timber land, was it open for settlement?

We think it was so, to a honest *bona fide* settler. If it was not within the lines of *Allen's* return of survey. But you will observe that the plaintiff did not clear any land, or cut any timber; he hauled logs from a distance, in April 1827, and got his house to the square. He never returned to the land, nor did he bring this ejectment till January Term, 1829. Was this diligence? When a man commences an improvement, he is bound to use diligence. Here

(McMutrie et al *v.* McCormick.)

he lays by from April, 1827, to November, 1829; in the meantime the defendants build a house. True he warned them, and threw that house down; still the jury are to determine did he use diligence. If, then, the jury should be of opinion, that the land was not within defendants' survey as returned, and that he did use due diligence, they may find such part for the plaintiff as was not in adverse possession, twenty-one years before ejectment brought; and which *McCormick* did not claim when it was sold to an innocent purchaser, without discovering his title. But if within defendants' survey, or if he did not use diligence, then they should find for defendants."

The jury found a verdict for the plaintiff, upon which judgment was entered. To reverse which, the writ of error was sued out, and the following errors assigned.

1. The court erred in instructing the jury, that the land in controversy, under the evidence, was open to settlement, if they should be of opinion that it was not within the surveyed or returned lines of *George Allen*.

2. In submitting it as a question for the decision of the jury, whether due diligence had been used by the plaintiff below, in the prosecution of his pretended settlement, when in truth there was no evidence of diligence.

3. In not instructing the jury, as matter of law, that the plaintiff could not support his ejectment under the evidence given in the cause.

*Miles* for plaintiff in error.
*Potter* and *Blanchard* contra.

The opinion of the court was delivered by

KENNEDY, J.—The first error assigned in this case is, "that the court erred in instructing the jury, that the land in controversy, under the evidence, was open to settlement, if they should be of opinion, that it was not within the surveyed or returned lines of *George Allen*." In this I can perceive no error. In this State two modes have obtained, by which, the inception of a right or title to lands from the Commonwealth may be acquired. First, by warrant or location and survey; and second, by an actual, personal, resident settlement upon the land itself. Anterior to the spring of 1827, when *McCormick* commenced building a house on the land in dispute, and was prevented from going on with the finishing of it by *McMutrie*, it does not appear, from the evidence, that *McMutrie* had made an actual, personal, resident settlement upon it, or that he had ever commenced any improvement thereon, with that view. Indeed it was not pretended by him or his counsel, that he had in this way acquired any title to the land. But it was shewn by him

that he had become invested with the title under the warrant gran-
ted to *George Allen*,. and the survey made and returned in pursu-
ance of it; and contended, that the survey included the·land in
dispute. It is clear, that if the survey made under *Allen's* war-
rant, embraced the land, it.was no longer vacant and unappropria-
ted, and liable to be obtained from the State by any other person,
either by warrant or·settlement.    But if the survey did not include
the land in dispute, it then, for any thing that appeared in evi-
dence, was in the spring of 1827, when *McCormick* commenced
building the house, vacant and unappropriated.    And if so, it
follows necessarily, that the right to it was still in the Com-
monwealth, and that it was liable to be obtained either by warrant
or settlement; and by him who should first resort to one or other of
these two modes.

The only arguments offered in opposition to this are, first, that
as evidence had been given by *McMutrie* of his having, for up-
wards of twenty years, exercised acts of ownership upon the land
in dispute, by cutting timber upon it, and by clearing.about half an
acre, a part of a field upon the *Allen* survey, and which extend-
ed over upon the land in dispute, and beyond what *McCormick* al-
leged was the true boundary of that survey; and at the same
time professing to claim and to hold this land in dispute, as land em-
braced by the survey made and returned under *Allen's* warrant, that
the jury ought to have been instructed by the court, that they might
presume a grant from the Commonwealth to *McMutrie* for the land.
It might perhaps be sufficient in answer to this, to say, that it does
not appear that any such instruction was asked for of the court.
But if it had, it ought not to have been given; because all grants of
land by the Commonwealth are put upon record, and are required to
be so: and as long as those records are preserved and continue to
exist, conclusive evidence of the grant, if any has ever been made,
will be found there: And if upon examination, no record of a grant
can be discovered, it raises a most violent presumption of a direct-
ly opposite nature; which is, that no such grant was ever made.

If the law were otherwise, many of those who hold their lands
in this State, merely by settlements or locations and surveys, for
which no part of the purchase money due to the State has been
paid, would stand discharged of all claim for it.    When by the
laws of the Commonwealth, persons are permitted to acquire a pre-
emption right to lands, by entering upon them at pleasure and ma-
king settlements, the·establishment of such a presumption would
only be calculated to defeat and to defraud.the State of her just
right to the·purchase money.

The circumstances, however, which the plaintiffs in error, here
claim to have been sufficient to have raised such presumption in his

[McMutrie et al. *v.* McCormick.]

favor, might, where the evidence with respect to the real extent of the survey under the *Allen* warrant was doubtful, weigh something with the jury, in determining that question, which was a matter of fact, belonging exclusively to their province to decide; and as such it was rightly committed to them by the court.

In the next place, it has been argued that *McMutrie* had such a possession of the land in dispute, by exercising these acts of ownership over it, as did not leave it open to settlement by any other person. Here it rather seemed to be admitted, that if the presumption contended for, did not arise against the Commonwealth, that she might have granted a warrant for the land to any person, and that it would have been good. Of the correctness of this, I think there can be no doubt. For it is not pretended, nor would the evidence seem to warrant it, that *McMutrie*, previously to *McCormick's* commencing the building of his house, had commenced an improvement with an intent to make an *immediate* settlement, and that he had prosecuted the same with *due diligence.* Yet without this, or a location or warrant and survey, *McMutrie* could have no possession known to, and recognized by the law, that could in any manner oppose the Commonwealth in granting a title for the land to any other person, or stand in the way of any other person, acquiring a right to it either by settlement or otherwise. If it be open and liable to be obtained in the one way, it must also be so in the other, for the law has made no distinction. Without an office-right from the Commonwealth, no possession that can be taken of land short of an actual, personal, resident settlement upon it, or an improvement commenced with such intent, to take effect immediately, and to be carried on with due diligence, will amount to an appropriation of the land, or give the least shadow or coloring of right or claim even to the possession of it. The man who takes, or attempts to take possession of land, belonging to the Commonwealth and unappropriated, for the purpose of preventing others from settling, without any such intention upon his part, acts in violation of all law: or even if he take possession for the purpose of clearing, enclosing and tilling it, with a view in this way to make gain or profit out of it, but without any intention of making it the place of his abode, and the means of subsisting himself and family, be trespasses upon the rights of the Commonwealth, and acts in direct violation of law, if he attempts to prevent another from entering upon the land, who wishes to become a *bona fide* settler upon it. His clearing over the lines of the survey under the *Allen* warrant, can vest no interest whatever in the vacant lands of the Commonwealth. See *Morris* v. *Thomas*, 5 *Bin.* 77. He cannot hold contiguous lands, not included in the survey. See *Holmes* v. *Hay*, 3 *Yeates*, 588.

It is surely no justification for *McMutrie* that he thought the land in dispute was included in the *Allen* survey, and that he thereby had a good right for it, because he was bound at his peril to know the extent of the survey under which he claimed, and his mistake in this respect can avail him nothing. And although *Mc-Cormick* believed that *McMutrie* labored under this mistake, and knew that he claimed the land in dispute as being part of the *Allen* survey, yet he was not bound to undeceive him, as long as he had no right or claim to the land himself. Indeed it is highly probable that *McCormick*, from hearing *McMutrie* claim the land in this way, was a long time impressed with the belief that it was included in the *Allen* survey, and therefore of right properly belonged to him; and as long as he remained under that impression, assented to the land's being the property of *McMutrie*, and treated it as such; but still I am at a loss to perceive, upon what principle of law or common sense, this should preclude *McCormick* from endeavoring to obtain a right for it from the Commonwealth, to whom it did most certainly belong, clear of all color of claim existing on the part of *McMutrie.*

*McMutrie*, then, if the land in dispute was not included in the survey made and returned under the *Allen* warrant, had no possession of it whatever, that could avail him any thing, or prevent others from obtaining a title from the State for it, either by taking out a warrant for, or by making a settlement on it, as either course must be alike open to the party, for him to elect that which may best suit his circumstances. *McMutrie* must be considered in the light of a trespasser, in what he did upon the land in dispute, and guilty of a flagrant violation of the law, in throwing down the house of *McCormick*, and in thus preventing him from going on to complete his settlement. It would be strange indeed if he were to be permitted, either to take advantage of his own wrong, or thereby suffered to prejudice the State in her right to dispose of the land, or to hinder *McCormick* from obtaining a title for it in any mode prescribed by law. His conduct may well be likened to that of the dog in the manger, not willing to purchase the land of the State himself, not yet let any body else have it.

The second error is, that the court below submitted to the jury, to be decided by them, whether due diligence had been used by the plaintiff below, in the prosecution of his settlement; when as the plaintiffs in error allege, there was no evidence of diligence. In *Micle* v. *Lucas,* 10 *Serg. & Rawle,* 294, 5, it was held by this court, that whether a right of preemption, founded on an improvement, was lost by laches, was a matter peculiarly proper for the *jury* to determine, where it depended upon a variety of facts. The

(McMutrie et al. *v.* McCormick.)

late *Chief Justice*, who delivered the opinion of the court, says, "there are cases, where the facts have been so strong, that the court has thought itself justified in deciding laches, as matter of law. But it has been more commonly left to the jury." And in *Casby* and *Brown*, 2 *Bin.* 124, where *Brown*, who was the plaintiff below, claimed by virtue of a settlement, but, after making some improvements, was prevented by the violence of the defendant, a younger settler, from continuing them; he laid by for more than seven years, without taking any measures to recover the possession, and without commencing his suit for that purpose; yet it was decided, that it ought to be left to the *jury* to determine whether he had not relinquished his settlement.

Now in the present case, I think it cannot be said, that the *facts are so strong* as to justify the court in deciding, as a question of law, that there was a want of due diligence on the part of *McCormick*, in prosecuting the work of his intended settlement. The building of the house, which was perhaps the most essential part of what was to be done, in order to make a settlement upon the land, was commenced by him, and after having been raised up to the square, *McMutrie*, the plaintiff in error, collected a force, and threw it down; and in a manner too, most likely to intimidate or bid defiance to the utmost power of *McCormick*, but as it would seem, not so as to induce him to relinquish his claim to the land; for about a year afterwards, when *McMutrie* attempted to erect a house upon the land, and had got it partly up, *McCormick* sought an opportunity when *McMutrie* was absent, and threw it down: and in about eight months after this, brought this suit to establish his right, and to recover peaceably the possession of the land, if entitled to it, that he might prosecute and finish his improvement.

From the daring and violent manner in which *McCormick*, while at work on the house, was attacked by *McMutrie*, and the whole of his work prostrated and torn down before his face, he had great reason to believe, that there would be little personal safety, for some time at least, in attempting to renew the work of building the house. He probably felt unwilling to embark immediately in an expensive and tedious law-suit, and was willing to wait some time, in hopes that a more favorable state of feeling on the part of *McMutrie*, might take place towards him. I can see no good reason, why such a course might not have been taken, and a reasonable time allowed for a return of such feelings as might possibly terminate the contest which had arisen, without going to law. In this, I can perceive no cause for blame: nor yet any thing that ought to prejudice the claim of *McCormick*. Whether he had not sufficient reason to delay as long as he did, without having laches or a want of *due diligence* imputed to him, was properly left to the jury. A man possessing less regard, perhaps, for the peace and good order of

society, and possibly a little more personal prowess than *McCor-mick*, placed in his situation, might have given *McMutrie* some reason to have complained of any thing but a want of *due diligence*. I must confess that the harshest name which I think could well be given to the conduct of *McCormick*, would be *reasonable forbearance*, which ought rather to make in favour than against him.

The third and last error is, that the court below did not instruct the jury as matter of law, that the plaintiff below could not support his ejectment under the evidence given in the cause. It has been decided repeatedly, that one who has a right of preemption to lands lying within the State, and east of the *Allegheny* river, and who has his boundaries designated, may recover in an action of ejectment without a survey: see *Luck* and *wife* v. *Duff*, 6 *Serg. & Rawle*, 189, and *Mickle* and another v. *Lucas*, 10 *Serg. & Rawle*, 295.

It is also true, that an improvement, in order to be available in law, so as to give a preemption right to land, must be commenced with intent to make an *immediate* settlement, and prosecuted with *due diligence* till the settlement is completed, and if done so, the title so acquired, will relate back to the commencement of the improvement. See *Wright* v. *Small*, 4 *Yeates*, 562.

The land in dispute was bounded and designated all around by the lines of official surveys made upon the adjacent land. These lines being marked upon the ground, and the respective courses and distances thereof being returned into the Surveyor General's office, or to be found in the Deputy Surveyor's office, furnished at once all the information necessary to be had, both in regard to location and quantity. They showed that the quantity of vacant land there was much less than what might have been acquired by settlement, had there been more of it; and no doubt the evidence was sufficient to justify the jury in finding that the plaintiff below had adopted and made these lines the boundaries of his claim.

In the next place, whether he commenced building the house upon the land in dispute, with intent to make an *immediate* settlement, and prosecuted this design with *due diligence*, were matters of fact to be decided by the jury. No body can deny that the building of the house was an important part of the work. It was not necessary that he should use the materials which were upon the land, for this purpose. He was at liberty to obtain them wherever it might best suit his convenience to get them. And if the evidence be credited, he was certainly prosecuting the work with rather remarkable diligence and despatch, until he was arrested in his progress by the violent interference and prevention of *McMutrie*. It was for the jury to decide whether *McCormick* would not, in all probability, from appearances, have completed his settlement with due diligence, had he not been prevented by *McMutrie;* and

(McMutrie et al. *v.* McCormick.)

whether or not *McMutrie* did not prevent *McCormick* from finishing his settlement in such manner as is required by law, in order to secure to him a preemption right to the land; and if they were satisfied that all this would have been done by *McCormick* had not *McMutrie* prevented him, we think that *McCormick* was entitled to recover the land.　The law will not permit *McMutrie* to take advantage of his own wrong, and to say, that because *McCormick* did not go on and complete his settlement with due diligence, therefore he shall not sustain his action of ejectment, or recover the land.　Nothing can be objected by *McMutrie*, as being wanting to entitle *McCormick* to sustain his action, and to recover the land in dispute, which has not been wrongfully caused by *McMutrie* himself.　*Nemo est dolo suo proprio relevetur, aut auxilium capiat.*　It was also very proper for the jury, in considering the circumstances in evidence before them, and in drawing their conclusions from them, not to omit paying a due regard to the maxim: *In odium spoliatoris omnia praesumuntur.*

Judgment affirmed.